IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Civil Action Case No. 4:18-cv-00580-MW-CAS

| | |
|---|---|
| BRENDA C. SNIPES <br> In her individual and official capacity, <br><br> Plaintiff, <br><br> v. <br><br> RICK SCOTT <br> In his official capacity as <br> Governor of Florida <br><br> and <br><br> Bill Galvano <br><br> In his official capacity as <br> President of the Florida Senate, <br><br> Defendants. <br> _____ / | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION**

**COMES NOW** Plaintiff, DR. BRENDA C. SNIPES (hereinafter "SNIPES"), by and through her undersigned counsel, in her individual and official capacity, and moves the Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction.

1. On December 17, 2018, Plaintiff filed its Emergency Complaint for Declaratory and Injunctive Relief, alleging that Plaintiff is entitled to relief because the Fourteenth Amendment Due Process Clause prohibits a state from depriving a person of "life, liberty, or property, without due process of law."

2. On December 24, 2018 Plaintiff filed her First Amended Emergency Complaint for Declaratory and Injunctive Relief. [1]

3. Plaintiff, Dr. Brenda C. Snipes ("Snipes") is a citizen of the State of Florida and a resident of Lauderdale Lakes, Florida for the past several decades. Since she was appointed on November 20, 2003, she was overwhelmingly elected countywide four separate times to serve as the Broward County Supervisor of Elections.

4. For more than the 15 years, Snipes oversaw approximately seventy-five permanent positions, which expanded to more than six thousand temporary employees during major elections.

5. During her tenure, Snipes identified and developed numerous office

---

[1] Pursuant to this Court's Order of December 18, 2018, the attorneys for all parties conferred on December 19, 2018. At that time, the undersigned advised that she would file an Amended Complaint to address a typographical error pointed out by counsel for Governor Scott; address that Snipes was also filing in her official capacity (as well as individual) and further remove references to back pay in the initial Complaint. Additional minor changes were also made to the Amended Complaint.

policies and procedures that moved the Broward County Supervisor of Elections Office forward. These polices were created to be consistent with the requirements of the Florida Election Code.

6. Among other relevant actions, Snipes established a Leadership Team whose members carry out the major functions of the Broward Supervisor of Elections Office. Each of the team members earned the designation of "Florida Master Certified Election Professional" (MFCEP), a program designed by the Florida Association of Supervisors of Elections working in conjunction with various major Florida universities.

7. During her tenure, Snipes ensured that all staff received development and training to support their roles and functions within the organization.

8. Since 2003, Snipes has increased voter education and outreach to include numerous monthly events and activities throughout Broward County. Under her leadership, more voters voted in the last mid-term election than ever in the history of Broward elections (715,119 votes out of 1,174,851). In the 2016 General Election, more than 800,000 voters cast ballots in Broward County.

9. One of the signature outreach programs implemented by Snipes was a robust high school program where high school students pre-register to vote and then vote in the election following their 18th birthday.

10. On November 18, 2018, immediately following a contentious election cycle, Snipes resigned from her position as the Broward County Supervisor of Elections effective January 4, 2019. (See Exhibit "1")

11. Just prior to her resignation, Governor Scott orchestrated a campaign scheme and strategy where he filed numerous baseless lawsuits against Snipes; unsuccessfully attempted to send in the Florida Department of Law Enforcement citing untrue claims of election fraud on the part of Snipes and the Palm Beach County Supervisor of Elections and made all attempts to harass and discredit Snipes.

12. Governor Scott, and others working on his behalf, tried in every way to damage Snipes' reputation and inject doubt into the minds of Broward voters that the Broward County elections process was being conducted properly. Tweets from the President of the United States and untrue allegations made by Governor Scott resulted in death threats against Snipes and her family members.

13. Through lawsuits and various requests from Scott's attorney, Governor Scott successfully tied up critical technology election staff with public records requests that were strategically designed to slow down the voting process in Broward County.

14. On November 27, 2018, Snipes attorneys sought to coordinate with Governor Scott's attorneys to set a hearing regarding a Motion that had been previously filed by Snipes challenging a prior court determination that public records were to be produced "immediately." The fact that Snipes did not produce records "immediately" was determined by a circuit court judge to be a per se violation of the Florida Constitution for which Snipes sought reconsideration (Broward County Circuit Court: CASE NO. CACE-18-026364 (25).[2]  (See Exhibit "2"); Communications confirming contact with Governor Scott's attorney is also attached (See Exhibit 3).

15. Without notice, on November 30, 2018, Governor Scott issued Executive Order 18-342 suspending Snipes as the Broward

---

[2] The records surrounding the subject lawsuit were produced within 48 hours during the height of a recount election. Judge Carol-Lisa Phillips determined that Snipes committed a constitutional violation for failure to "immediately" produce records. Many of the requests involving the public records lawsuit were for records that the Governor already had access to through his appointed Secretary of State. Other items requested were not actually public records. Several of Governor Scott's lawsuits were consolidated before the Chief Judge of the Circuit Court, Judge Tuter. This judge would have reviewed the issue of whether Judge Phillips' order should have been stayed. In the alternative, Plaintiff Snipes contemplated an appeal. The well-known Florida standard for the production of public records is within a "reasonable time." Governor Scott knew that Snipes was seeking to set a hearing on her Motion to Stay and if that motion failed, to appeal the matter. After the undersigned firm called to schedule a hearing, Governor Scott dismissed his public records lawsuit within thirty minutes after the call was made, and to add insult to injury, suspended Snipes from her position as the Broward County Supervisor of Elections within a few days after voluntarily dismissing his Complaint. Ironically, the first substantive allegation of the Governor's Executive Order to remove Snipes cites that she did not permit inspection of public records and that "a judge of the Seventeenth Judicial Circuit held that Supervisor Snipes should have made certain records "immediately available in violation of Florida law." Since the filing of this initial action, Snipes has requested public records from both Defendants. Such records were not "immediately" produced and still have not been produced to date.

County Supervisor of Elections. This action was taken after 5:00 PM on a Friday. (See Exhibit 4).

16. If Snipes had been given the opportunity for due process, Snipes would have defended herself against the allegations contained within Governor Scott's Executive Order. In short, the Executive Order fell into the following categories: a) matters where the Chief Judge Tuter reviewed Scott's Complaints and found that ballots should be accepted; b) actions that were unknown to Snipes but completely cured by canvassing board review and subsequent court review; c) an action that was investigated and determined to be unfounded as to Snipes' involvement [3] (See Exhibit 5); d) a matter related to uploading which was, in part, caused by the Governor's own calculated interference – i.e., the uploading of ballots took a significant amount of time because it was a large file and uploading could not start until after a Court hearing on one of Governor Scott's many filed lawsuits for nonexistent documents or documents that were already accessible to Governor Scott, or delays caused by Governor Scott related to the inspection of the computer system records, or the refusal of Governor Scott or those directed by

---

[3] In one particular case, an election vendor produced an affidavit showing that it was completely their fault when election results were released minutes earlier than they should have been released. This matter was reviewed the Broward County State Attorney's Office and no further action was taken.

state actors working on behalf of Scott to provide technical assistance to Broward, all causing a State deadline to be missed by minutes[4]; or e) allegations made that were false; and f) an allegation involving destroyed ballots where ballots were preserved using Clear Ballot technology on State of Florida approved equipment.[5]  In that case, no determination was ever made by any court that there had been a refusal by Snipes to produce said ballots.

17. Pursuant to Section 98.015, Florida Statutes, a Supervisor of Election is elected for a four-year term. In Broward, the Supervisor of Elections is an independent constitutional officer elected by the voters of Broward County. Governor Scott appointed Peter Antonacci, to replace Snipes. Antonacci was not a resident of Broward County at the time of the appointment.

18. On December 1, 2018 (one day following her suspension), Snipes held a press conference in Fort Lauderdale, Florida where she

---

[4] There were other counties within the State of Florida that did not try to upload the second unofficial returns.  The Governor has taken no action nor made attempts to suspend those Supervisors of Elections.  Furthermore, the "Conduct of Election" reports show some legal violation(s) in many of the 67 counties.  In Bay County, for instance, voters were permitted by the Supervisor of Elections to vote in ways not contemplated by Florida Statutes.  Governor Scott targeted Broward County and Palm Beach County with reckless comments about voting fraud and claims that the supervisors in those counties were seeking to "steal" the election for Governor Scott's opponent. Both counties are largely Democratic voting counties.

[5] *Canova v. Snipes*, was filed in the Broward County Circuit Court.  The lower Court never determined that there had been a "refusal" to provide public records. The Governor's Office and the Secretary of State monitored the case through conclusion. The case was appealed due to the fact that there was never a legal determination made on the issue of refusal, especially since Plaintiff did not request paper ballots prior to the lawsuit. The case settled before a final determination was made by the appellate court on the issue of "refusal" to provide public records.

invited all major news organizations and she publicly rescinded her resignation, effective immediately.

19. Snipes has no way of challenging the Governor's Executive Order labeling her "incompetent", among other things. While no elections are ever perfect given the sheer number of volunteers and responsibilities, Scott reserved his fury of insults and executive power of suspension only for Snipes.

20. Snipes is sought out for lectures from other state Supervisors of Elections. Her office was often visited for best practices by other State of Florida Supervisors of Elections. Snipes hosted the 2018 Annual Supervisor of Elections conference in Broward for all state Supervisors of Elections. Snipes was a long-time administrator before ever becoming a Supervisor of Elections, a key reason why she was tapped for the position. Snipes earned a Doctorate in Educational Leadership from Nova Southeastern University.

21. Snipes seeks to fight for her reputation and stand up against the embarrassment that has been caused by Governor Scott's unnecessary and malicious suspension. There are false allegations contained within the Executive Order and Snipes has never had a proper forum to state her position. The Governor's suspension has gained national attention as a widely publicized matter. Snipes' reputation as a

well-respected leader within the State of Florida has been damaged while the Governor has mounted daily attacks through various sources aimed to damage Snipes.

22. In addition to a public press conference held one day after the issuance of the Governor's Executive Order, Snipes reiterated her decision to rescind her resignation in an email sent to the Governor Scott on December 6, 2018 (See Exhibit 6).

23. Following widespread reports that Snipes had been suspended, the undersigned attorney called Senate General Counsel Jermiah M. Hawkes on December 3, 2018 inquiring about the senate forms necessary in order to start the process for a Senate hearing. Hawkes advised that he had not received a copy of the Executive Order and would also need to research the proper forms to be sent. Hawkes further advised that once the proper forms were identified (by him), the forms would be promptly mailed to Snipes advising her of "her right to a Senate hearing." Snipes has never received any form(s) advising her of her right to a hearing.

24. On December 6, 2018, Peter Antonacci was sworn in as the Broward County Supervisor of Elections.

25. On December 13, 2018, Bill Galvano, Senate President

issued a memorandum to all Florida Senators and the media essentially stating that because the November 18, 2018 resignation of Snipes was "unconditional" and "will take effect on January 4, 2019, well before the Senate can complete a full investigation into the serious assertions made by the Governor's Executive Order" no further action will be taken by the Senate.  (See Composite Exhibit 7 – Memorandum from Senator Galvano and Jeremiah M. Hawkes)

26. In light of the Senate's refusal to review the Governor's actions, Governor Scott and the Senate are operating in concert to deny Snipes her due process rights under the Fourteenth Amendment of the United States Constitution.

27. Snipes has a clear "liberty" interest in defending her reputation against the Governor's allegations and property interest in her elected position as the Broward County Supervisor of Elections.

28. The action filed by Snipes is pursuant to 42 U.S.C. §1983 for deprivation of civil rights under color of law, which seeks equitable, declaratory and injunctive relief challenging the State of Florida in laws regarding executive suspension, to wit: Florida Statute §112 Part V §112.43, §112.44 §112.45, §112.46, §112.47, §112.48, §112.52 and Florida Senate

Rule 12.9, Florida Statutes §112.46 also provides that public officers can seek a judicial determination of his or her right to office.

29. As applied to Snipes, Florida laws do not require a hearing before an individual is deprived of a property and/or liberty interest.

30. Because Snipes has no opportunity to be heard and her Suspension effectively operates as a removal from an elected office, Plaintiff seeks an injunction invalidating the suspension because the Governor should not be permitted to suspend and effectively remove Snipes without the due process afforded by the United States Constitution. Snipes' resignation, previously effective January 4, 2018, and later rescinded by Snipes, should be of no consequence and should be rendered invalid.

31. The Governor's orchestrated shattering of Snipes' reputation was without due process of law where no procedural safeguards are in place to allow Snipes to respond to Governor Scott's politically motivated Executive Order.

32. Plaintiff seeks a preliminary injunction requiring Defendants, their officers, successors, employees, and agents, and all persons acting in active concert or participation with Defendants, or under Defendants' supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, to invalidate the Governor's Executive

Order of Suspension, promptly reinstate Snipes, and/or establish procedural safeguards that will permit Snipes to have notice and a meaningful opportunity to be heard in a meaningful manner.

33. In support of this motion, Plaintiff submits a Memorandum of Law, addressing all necessary elements for the entry of a preliminary injunction.

34. Plaintiff files this motion as an emergency motion pursuant to Local Rule 7.1(L) because Plaintiff has been left in limbo without a meaningful way to address the constitutional violations of the Defendants towards Snipes.

35. It is essential that this Court resolve the motion as Plaintiff's reputation continues to be soiled by the actions and inactions of Defendants. (See Exhibit 8 - Declaration of Brenda C. Snipes)

36. Plaintiff also seeks oral argument in support of this motion pursuant to Local Civil Rule 7.1(K) on January 7, 2018. [6]

**WHEREFORE**, for the foregoing reasons, and for those set forth in Plaintiff's supporting Memorandum of Law and Declaration, Plaintiff requests the entry a preliminary injunction invalidating the Governor's Executive Order of Suspension as herein set forth.

---

[6] The Court previously set oral argument for January 7, 2018 at 1:00 PM for all parties.

Respectfully submitted this 24th day of December, 2018.

>By /s/ <u>Burnadette Norris-Weeks</u>
>Burnadette Norris-Weeks, Esquire
>Fla. Bar No.: 949930
>401 NW 7th Avenue
>Fort Lauderdale, Florida 33311
>Telephone: 954-768-9770  Facsimile 954-768-9790
>Email: Bnorris@bnwlegal.com
>Attorney for Plaintiff, Dr. Brenda C. Snipes

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 24, 2018, I caused the foregoing to be filed with the United States District Court for the Northern District of Florida via the Court's *CM/ECF* system, which will serve all registered users on the attached Service List:

>  */s/ Burnadette Norris-Weeks*
> Burnadette Norris-Weeks

## **SERVICE LIST**

*Counsel for Rick L. Scott*
*In his official capacity as Governor of Florida*

Meredith L. Sasso, Esq. (Fla. 58189)
Executive Office of the Governor
400 S Monroe St # 209
Tallahassee, FL 32399-6536
United States
T. (850) 717-9310
Email: meredith.sasso@eog.myflorida.com

*Counsel for Bill Galvano*
*In his official capacity as Florida Senate*

Jeremiah M. Hawkes, Esq. (Fla. 472270)
302 S Monroe
402 S Monroe St
Tallahassee, FL 32399-6526
United States
T. (850) 487-5237
F. (850)-487-6444
Email: hawkes.jeremiah@flsenate.gov