# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**BRENDA C. SNIPES,**

    *Plaintiff,*

v.                                                                          CASE NO. 4:18-CV-580-MW/CAS

**RICK SCOTT,** in his official capacity
as Florida Governor, and **BILL
GALVANO,** in his official capacity
as President of the Florida Senate,

    *Defendants.*
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This is a due process case. Plaintiff Brenda C. Snipes served as the Broward County Supervisor of Elections from 2003 until Defendant Rick Scott suspended her on November 30, 2018 by executive order.[1] Snipes filed suit, alleging violations of her Fourteenth Amendment right to due process of law. She seeks, among other things, reinstatement to the Supervisor position and injunctions against Defendants from enforcing various state provisions against her.

---

[1] Scott was Florida's governor until January 8, 2019, when he was succeeded by Ron DeSantis. DeSantis is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d). This Court refers to Scott throughout the Order because it was his actions that gave rise to this lawsuit.

1

The issue here is whether Scott could suspend and publicly vilify a constitutional officer without a meaningful opportunity for her to be heard. The answer is no. In so stating, this Court is *not* determining what the ultimate outcome will or should be. Accordingly, this Court, after hearing on January 7, 2019, **GRANTS in part** and **DENIES in part** Plaintiff's motion for preliminary injunction. ECF No. 15.

# I

Brenda Snipes began her tenure as Broward County Supervisor of Elections in November 2003. ECF No. 14, at ¶ 9. Snipes supervised approximately 75 permanent employees—a number that increased during election cycles—including several on a Leadership Team she established. *Id.* at ¶¶ 10–12. Snipes worked to ensure the staff received training and support and that such training "involved Broward's diverse population." *Id.* at ¶¶ 13 & 17. During her fifteen years as Supervisor of Elections, Snipes implemented pre-registration for high school students, published election materials in English, Spanish, and Creole, and worked to expand early voting locations. *Id.* at 15–16 & 20–21.

On November 18, 2018, Snipes submitted a letter of resignation to Scott. *See* ECF No. 14, Ex. 1. In it, she identified January 4, 2019 as the effective date of her resignation. *Id.* at 2. On November 30, 2018, Scott, without warning, issued an executive order suspending Snipes as Supervisor of Elections

effective immediately. *See* ECF No. 14, Ex. 4.[2] Scott's order stated that "due to her demonstrated misfeasance, incompetence, and neglect of duty, Supervisor Snipes can no longer demonstrate the qualifications necessary to meet her duties in office" and that she has "repeatedly failed" in her position. *Id*. at 3–4. Scott listed several past episodes to support his suspension. *Id*. at 1–3. He appointed Peter Antonacci as Supervisor of Elections, *id*. at 5, who was then sworn in on December 3, 2018. ECF No. 14, Ex. 7, at 5.

The day after Scott suspended her and Peter Antonacci was appointed Broward County Supervisor of Elections, Snipes attempted to rescind her resignation at a press conference. ECF No. 14, at ¶ 34. An email followed communicating the same retraction a few days later. *See* ECF No. 14, Ex. 6.

Under Florida law, the Senate can either remove or reinstate a suspended public officer. *See generally* FLA. CONST. art. IV § 7(b) ("The senate may, in proceedings prescribed by law, remove from office or reinstate the suspended individual") *and* §§ 112.40–112.52 Fla. Stat. (2016); *see also* § 112.44 Fla. Stat. (2016) ("In the event any officer suspended by the Governor

---

[2] Snipes was the only Supervisor of Elections to be suspended but not the only one whose performance during the 2018 elections came under fire. *See* Elizabeth Koh, *Hurricane-ravaged Florida county allowed some 'displaced' people to vote by email*, TAMPA BAY TIMES, NOV. 12, 2018, *available at* https://www.tampabay.com/florida-politics/buzz/2018/11/12/hurricane-ravaged-florida-county-allowed-150-displaced-persons-to-vote-by-email/ ("Bay County Supervisor of Elections Mark Andersen said 11 ballots were accepted by email and 147 ballots were domestically faxed in, though state statute does not allow emailed ballots and faxing in ballots is only permitted for military and voters overseas."). But this is not a race or gender discrimination case under the Equal Protection Clause.

shall not be removed by the Senate, the officer shall be reinstated . . ."). State law details the procedures for removal or reinstatement, requiring that these processes must "afford due process" to both the Governor and the suspended individual. § 112.47 Fla. Stat. (2016). Here, however, the Senate declined to act because the position had been filled prior to the Senate being able to take timely action. ECF No. 14, Ex. 7. The Senate will not be in session until March 5, 2019, ECF No. 20, at 7, and Snipes' resignation—as explained below—was effective November 18, 2018. In short, Snipes was suspended from office but, due to the suspension's timing, was unable to have a hearing before the Senate pursuant to Florida law.

## II

This Court is reviewing Snipes' suspension, not the appointment of her replacement. The qualifications of a state's officers are determined by state law. *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991). Defendant Galvano's counsel ably lays out the development of Florida law on when resignations are effective. ECF No. 20, at 2–9. Florida law appears clear on this matter. A "vacancy in office 'shall occur' upon *inter alia* 'resignation.'" *Spector v. Glisson*, 305 So.2d 777, 779 (Fla. 1974). In so holding, the Florida Supreme Court declined to follow an advisory opinion that pre-dated Florida's 1968 constitution, which specified how "there is no 'vacancy' until the effective date of the resignation." *Id.* (citing *In re Advisory Opinion*, 158 So. 441 (Fla. 1934)).

4

Put another way, "a public officer's resignation, stated to be effective immediately, is effective upon submission to the proper authority." *Smith v. Brantley*, 400 So.2d 443, 445 (Fla. 1981).

Under this reasoning, a vacancy was created on November 18, 2018, when Snipes submitted her resignation to Scott, the proper authority. Snipes could not withdraw her resignation after her replacement had been appointed and sworn in because hers was an unconditional resignation. As Defendant Galvano's counsel persuasively argues, once Snipes submitted her resignation without conditions, Scott's acceptance was a mere ministerial act. But rather than accept the resignation quietly and avoid trampling on Snipes' due process rights, Scott suspended Snipes and vilified her without giving her a meaningful opportunity to be heard.

Scott's suspension of Snipes was an effective termination. Snipes identified January 4, 2019 as her last day as Supervisor. Scott suspended her on November 30 and appointed a successor effective immediately. ECF No. 14, Ex. 4. Scott labels the 36-day-long difference as a suspension but, because the Senate could not reasonably act to remove or reinstate Snipes during that time, it was an effective termination. Scott argues the suspension was not a final action because the Senate needed to act; the Senate, meanwhile, argues it could not reasonably act during this period. This dizzying Ouroboros-like

5

argument can be rectified by relying on common sense—Snipes' suspension without any recourse was an effective termination.

### III

A district court can only grant a motion for preliminary injunction "if the moving party shows that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). Although a "preliminary injunction is an extraordinary and drastic remedy," it nonetheless should be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).[3] [4]

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[4] This Court recognizes that "[w]hen a preliminary injunction is sought to force another party to act," as is here, "it becomes a 'mandatory or affirmative injunction,' and the burden on the moving party increases." *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).

**A**

The Fourteenth Amendment says that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Due process does not mean no process. When it comes to key rights, government officials do not have the luxury of doing whatever they want.

Against the Governor, Snipes has a substantial likelihood of success on the merits of her constitutional claim asserting she was denied a meaningful opportunity to be heard. She argues her property and liberty interests were violated when Scott suspended her weeks before she was to leave office—and without any opportunity to be heard. Against the Senate, Snipes does not have a substantial likelihood of success. This Court focuses on Snipes' liberty interests, the analysis of which is more straightforward and leads to the same holding. *See Reams v. Scott*, 2018 WL 5809967 (N.D. Fla. Nov. 6, 2018) (explaining that the "property issue may not matter anyway" in light of liberty interests at stake).

Snipes alleges that Scott infringed on her liberty interests under the "stigma-plus" doctrine. A "plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation

7

of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing *Paul v. Davis*, 424 U.S. 693, 701–02 (1976)). "In considering what satisfies the 'plus' prong of this analysis, the *Paul* Court looked to whether state action had significantly altered or extinguished 'a right or status previously recognized by state law.'" *Behrens v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005) (quoting *Paul*, 424 U.S. at 711). The Eleventh Circuit has recognized that "most stigma-plus cases involve claims by government employees who have been discharged or whose employment status has been otherwise negatively affected." *Id.* at 1263 n.14. "It is the individual's status as a government employee and not his property interest in continued employment which furnishes the 'plus' that raises reputation to the level of a constitutionally protected liberty interest." *Dennis v. S&S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 343 (5th Cir. 1978).

The Eleventh Circuit has outlined a six-factor test for plaintiffs to meet when "reputational damage is sustained in connection with a termination of employment." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). Plaintiffs must show that "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an

8

employee name clearing hearing." *Id.* (quoting *Warren v. Crawford*, 927 F.2d 559, 565 (11th Cir. 1991)).

Snipes has met these requirements. There can be no question that Scott's executive order was public and was made by the proper authority. As explained above, Snipes' suspension was an effective termination because the Senate could not reasonably act to remove or reinstate her pursuant to state law. *Supra* at 5–6. Moreover, Scott's executive order contains some falsehoods of a stigmatizing nature. Some of the falsehoods form the heart of the executive order. For example, Scott erroneously claimed "Supervisor Snipes posted the results of early voting and some vote-by-mail ballots thirty minutes before the polls closed" in the 2016 primary election. ECF No. 14, Ex. 4, at 3. Snipes provides evidence that this error was a vendor's technician's unintentional mistake. ECF No. 14, Ex. 5. Scott's statement on this episode is stigmatizing because it erroneously places Snipes in violation of her job duties. Additionally, Snipes asserted at the hearing that she had not authorized the opening of vote-by-mail ballots before they had been canvassed by the canvassing board, contrary to the executive order's language. *See* ECF No. 14, Ex. 4, at 3. In his executive order, Scott also accused Snipes of "misfeasance, incompetence and neglect of duty," catch-all terms so broad and vague as to be meaningless.

The Due Process Clause does not prohibit a state from depriving a person of liberty. But there must be *some* process—notice and a meaningful

9

opportunity to be heard. *See Eldridge*, 424 U.S. at 348–49 ("'The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring))). "When protected interests are implicated, the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). If an individual is denied a pre-deprivation hearing, there must have been some "'extraordinary situation[] where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id.* at 570 n.7 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). When the government has a need to act swiftly, "the necessary notice and rudimentary hearing should follow *as soon as practicable*." *Goss v. Lopez*, 419 U.S. 565, 582–83 (1975) (emphasis added).

Here, Snipes is likely to prevail on the merits because she was denied due process entirely. She had neither an opportunity for a pre-deprivation hearing, nor has she been afforded a post-deprivation hearing. In fact, the Senate foreclosed a full post-suspension hearing as state law outlines because of the contours of the legislative calendar. Therefore, Snipes has had and will have *zero* opportunity to tell her side of the story in any official forum. At the preliminary injunction hearing, Scott's counsel suggested Snipes could write letters or air her grievances in the news media. This is not a meaningful

10

opportunity to be heard. On the contrary, the excessive airing of grievances—whether real or imagined—across news outlets and social media has led in recent years to the degradation of public discourse.

The law can be unclear at times. Statutes can be ambiguous; case law can meander, diverge, or swerve from common sense. Judges face murky legal issues every day. Today is not one of those days. Procedural due process is not ambiguous. Flagrantly disregarding Plaintiff's constitutional rights fits into an unfortunate rhythm for Scott. But the ease and comfort Scott has in overlooking Plaintiff's due process rights does make it legally permissible.

### B

Snipes also succeeds on the remaining preliminary injunction factors. The next factor is irreparable injury, the "*sine qua non* of injunctive relief." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation marks and quotation omitted). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Id*. "The injury must be neither remote nor speculative, but actual and imminent." *Id*. (quotation omitted). "When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary." C. Wright & A. Miller, Fed. Prac. & Proc. § 2948.1 (3d ed. 2017).

Snipes' constitutional deprivation absent a meaningful opportunity to be heard is irreparable. A damaged reputation without any sort of post-deprivation hearing—an actual and imminent injury here—cannot be undone through monetary remedies. Scott argues that Snipes has not suffered irreparable harm because her suspension was not a final action. ECF No. 21, at 16. But, as explained above, this argument is faulty because Snipes' suspension was an effective termination. *Supra* at 5–6.

The balance of the equities also favors Snipes. Scott has not articulated any interest—nor can he—in denying Snipes her day to tell her side of the story. On the other hand, Snipes has a profound interest in exercising her due process rights. It is true that "the State has a separate and significant interest in the proper administration of its public offices under the Constitution and laws and in conformity with the needs and interests of the public," ECF No. 20, at 17, but an individual's procedural due process rights outweigh the state's interest.

Finally, Snipes receiving a meaningful opportunity to be heard will not in the least be adverse to the public interest. Rather, it is in the public interest for state leaders to abide by the Fourteenth Amendment's Due Process Clause. The public interest is always served by the vindication of fellow citizens' constitutional rights.

IV

Snipes cites no authority requiring this Court to reinstate her to public office nor is this Court aware of any legal principle demanding such a remedy. Rather, Snipes is entitled to a meaningful opportunity to be heard.

This Court emphasizes that it is not requiring a specific *outcome*. It is merely requiring meaningful *process*—as the Constitution demands. This Court also emphasizes that, although Governor DeSantis has been substituted as a party, he has been accused of no wrongdoing but must, by law, inherit what his predecessor has left him.

In considering a remedy, this Court follows what my learned colleague ordered in a similar recent case. *See Reams*, 2018 WL 5809967, at *5.

By January 31, 2019, the Governor must provide Snipes notice. A meaningful opportunity to be heard must occur on or before March 31, 2019. Notice must involve specific allegations and if it includes broad catch-all phrases like "misfeasance" and "incompetence" the notice must identify what specific conduct those kinds of phrases refer to.[5] A meaningful opportunity to be heard means an opportunity to present evidence to the Governor, either in

---

[5] At the preliminary injunction hearing, this Court questioned Scott's counsel on whether such catch-all phrases incorporated by reference previously identified conduct in the executive order and whether the list of specific allegations was exhaustive. He answered in the affirmative. If this is not correct and there are additional specific allegations not enumerated, then Snipes must be provided with notice of those additional allegations.

13

writing or through witnesses, and an opportunity to present argument to the Governor, either in writing or orally.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff Brenda Snipes' motion for preliminary injunction, ECF No. 15, is **GRANTED in part** and **DENIED in part**. It is **GRANTED** insofar as Snipes is entitled to notice and a meaningful opportunity to be heard as outlined above. Defendant DeSantis is preliminarily enjoined to afford Snipes notice and a meaningful opportunity to be heard as outlined above. It is **DENIED** in all other respects.

2. The preliminary injunction set out above will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. Snipes will immediately notify Defendant DeSantis when the bond is posted and thereafter immediately file proof of such notice through the electronic case files system.

3. Likewise, upon receipt of the notice of the posting of security, Defendant DeSantis shall submit a notice of compliance with this Court on or before the day Snipes is given notice and on or before the

day Snipes is given a meaningful opportunity to be heard.

**SO ORDERED on January 9, 2019.**

**s/Mark E. Walker           **
**Chief United States District Judge**
